UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KAREN HAMM
6658 Sheetram Road
Lockport, NY 14094

                       Plaintiff,

    vs.

BOARD OF EDUCATION FOR THE
WILLIAMSVILLE CENTRAL SCHOOL DISTRICT
105 Casey Road
East Amherst, NY 14051

MICHAEL CALANDRA, individually and in his
official capacity as an employee of Williamsville
Central School District
1575 Maple Road
Buffalo, NY 14221

KIMBERLY KIRSCH, Ed.D., individually and in
her official capacity as an employee of Williamsville
Central School District
926 Alaura Drive
Alden, NY 14004

                    Defendants.

**COMPLAINT**

Case No.  1:13-cv-952

_____

## PREAMBLE

1.      Plaintiff, KAREN HAMM, brings this action for injunctive relief and monetary damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§2000e, *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.*; and the New York State Executive Law §296 ("the New York State Human Rights Law" or "HRL").

2.      Plaintiff seeks redress for injuries she sustained as a result of Defendants' discrimination and retaliatory actions against Plaintiff.

## JURISDICTION AND VENUE

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and pursuant to this Court's supplemental jurisdiction over Plaintiff's state law claims.

4.      Venue is proper in the Western District of New York as Plaintiff and Defendants reside in the Western District of New York, and a substantial part of the events giving rise to the claims herein occurred in the Western District of New York.

5.      Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 29, 2012.  The EEOC provided Plaintiff with a "Right to Sue" letter, dated July 31, 2013, which was received by Plaintiff on August 1, 2013.

## PARTIES

6.      Plaintiff is a citizen of the United States, residing in Niagara County in the State of New York.  At all relevant times, Plaintiff was (and continues to be) an employee of Defendant WILLIAMSVILLE CENTRAL SCHOOL DISTRICT.

7.      Defendant WILLIAMSVILLE CENTRAL SCHOOL DISTRICT ("Defendant District") is government entity authorized under the laws of the State of New York, and is located in Erie County in the State of New York.  Defendant District employs more than one hundred (100) employees.

8.      Defendant MICHAEL CALANDRA ("Defendant Calandra") is an employee of Defendant District and serves as the Principal of Mill Middle School (hereinafter, "Mill"), a

2

school within Defendant District's school district, where Plaintiff is a teacher.  Defendant

Calandra is a citizen of the United States, residing in Erie County in the State of New York.

9.     Defendant KIMBERLY KIRSCH, ED.D. ("Defendant Kirsch") is an employee of

Defendant District, and serves as Defendant District's Assistant Superintendent for Human

Resources and Civil Rights Compliance Officer.  In said position Defendant Kirsch is

responsible for the administration of applicable federal and state laws/regulations and policies of

Defendant District.  She is also the Complaint Officer for complaints alleging illegal

discrimination, harassment, or retaliation.  Defendant Kirsch is a citizen of the United States,

residing in Erie County in the State of New York.

## FACTS OF THE CASE

### Plaintiff's Hiring and Early Employment at Mill Middle School

10.     Plaintiff was hired by Defendant District in or about 1992 to teach Spanish and

French at Mill, but has served solely as a Spanish teacher every year subsequent to her first year

until very recently when she was assigned to again to teach French and Spanish.

11.     Plaintiff was awarded tenure by Defendant District in or around 1995 and has

received positive teaching evaluations each and every year that she has been employed by

Defendant District.

12.     Plaintiff's employment record is blemished only by the instances of selective and

unwarranted discipline she has been subjected to by Defendant Calandra, current principal at

Mill, in retaliation for Plaintiff's engagement in activities protected by Title VII and/or the HRL

and/or discrimination against Plaintiff in violation of the ADEA.

**Michael Calandra's Employment History and Early Interactions with Plaintiff**

13.     In 1993, Defendant Calandra was hired to work at Mill as a French teacher.

14.     Although Plaintiff originally considered Defendant Calandra a friend and colleague, she eventually became uneasy with him based on interactions she had with him and with the way she witnessed Defendant Calandra treat others.  For instance, Defendant Calandra referred to Plaintiff as a "Pollack" (a derogatory name for individuals, such as Plaintiff, of Polish decent) and stated that he and other individuals who are Italian were superior.

15.     While Plaintiff and Defendant Calandra were co-workers in the 1990s, Defendant Calandra would often make rude and degrading comments toward Plaintiff.

16.     In or around 1995, Defendant Calandra began the process of obtaining an administrative degree, during which time he performed an administrative internship at Mill.

17.     One day, while working at Mill as an administrative intern, Defendant Calandra approached Plaintiff in her classroom and made mean-spirited and threatening statements toward her and her career within Defendant District's school district.  Defendant Calandra's threatening and mean-spirited berating of Plaintiff on this occasion lasted for approximately one (1) hour.

18.     In or around 1997, shortly after this incident in Plaintiff's classroom, Defendant Calandra left Defendant District's school district and took a position within the Amherst Central School District, in Amherst, New York, as an assistant principal at Amherst Middle School.


**Investigations against Defendant Calandra (and others) and Plaintiff's Participation Therein**

19.     Between 1997-1998, Defendant District received multiple allegations from female employees that male members of the staff at Mill were engaging in gender-based harassment

4

against female members of the staff and/or were creating a hostile work environment. The alleged conduct violated Title VII and/or the HRL.

20.     Defendant District investigated the allegations against the male staff members. During the course of the investigations Defendant Calandra's name was raised as an individual who had also engaged in conduct that violated Title VII and/or the HRL. During the investigations, Plaintiff voluntarily testified about her own interactions with Defendant Calandra and male members of the staff at Mill and interactions she had witnessed with other female employees at Mill. Upon information and belief, many of the individuals who were being investigated were close friends with Defendant Calandra.

21.     Plaintiff's good faith participation in the investigations of the male staff members is an activity protected by the Title VII and/or the HRL.

22.     Upon information and belief, the only action that was taken by Defendant District in the face of the allegations against the male staff members were to transfer some of the complaining female employees out of Mill.

**Defendant Calandra Becomes Assistant Principal (and eventually Principal) at Mill Despite Plaintiff's Objections Thereto**

23.     In 2000, Defendant Calandra applied for an open assistant principal position at Mill. Plaintiff was chosen to serve on the interviewing committee for said position.

24.     While serving on the interviewing committee, Plaintiff stated her objections to the hiring of Defendant Calandra and the basis therefor (including his previous harassment of her and others, as well as his friendship with other male employees at Mill whom Plaintiff had reasonably believed to have also engaged in improper conduct against female staff).

25.    Plaintiff's good faith statement of objections against Defendant Calandra's hiring due to her concern over his previous inappropriate conduct against herself and other female staff at Mill is an activity protected by Title VII and/or the HRL.

26.    Although Plaintiff's participation on the hiring committee was supposed to be confidential, upon information and belief, Plaintiff's objections against Defendant Calandra's hiring did not remain confidential, since one of Defendant Calandra's close friends was also on the hiring committee (this individual was also one of the male staff at Mill who had previously been investigated along with Defendant Calandra).

27.    In addition to speaking out against Defendant Calandra's hiring through the committee process, Plaintiff also wrote a letter to Dr. Thomas Ramming, Defendant District's then Assistant Superintendent of Human Resources, stating her objections to the hiring of Defendant Calandra, and Plaintiff had a copy of this letter placed in her own personnel file.

28.    Plaintiff's good faith objection to Defendant Calandra's hiring in her letter to Dr. Ramming is an activity protected by Title VII and/or the HRL.

29.    Despite Plaintiff's objections, Defendant Calandra was awarded the assistant principal position in 2000, and was promoted to principal of Mill in 2003.  Defendant Calandra has held this position ever since (receiving tenure in or around the 2006-2007 school year).

30.    For the last several years and continuing to the present (as stated in more detail below), Defendant Calandra has continually harassed and discriminated against Plaintiff, creating a hostile work environment, and has repeatedly retaliated against her for her engagement in the protected activities described above.  Defendant Calandra's harassment and discrimination against Plaintiff began in close proximity to Plaintiff's engagement in activities protected by Title VII and/or the HRL (and more particularly began in close proximity to the time within

which Defendant Calandra gained a position of superiority over Plaintiff when he became

principal of Mill in 2003, and received tenure in or around the 2006-2007 school year).

**Harassment of Plaintiff by Plaintiff's Co-Worker, Suzanne Sammarco, and Defendant District's (particularly Defendant Calandra's) failure to Redress Same**

31.     Suzanne Sammarco (hereinafter, "Sammarco") was hired in 2004 as a full-time

Spanish teacher at Mill and Plaintiff served as her unofficial teacher-mentor.  In this role Plaintiff

worked closely with Sammarco and provided her many of her own instructional tools, such as

lesson plans.  Sammarco was a younger teacher in her mid-20s at the time of her hiring.

32.     While serving in the role as Sammarco's teacher-mentor, Plaintiff witnessed

Sammarco act in a manner which was unbecoming of a teacher.  For instance, Plaintiff witnessed

Sammarco use swear-language in front of students and mock students within school during

instructional and test taking times.  Sammarco would also refer to Plaintiff and other staff with

derogatory and inappropriate words such as "Bitch."  When Plaintiff asked Sammarco to stop

this conduct, Sammarco called her "an old lady."

33.     Other staff also witnessed Sammarco's unbecoming conduct, and shared concerns

about Sammarco with Plaintiff as well as with Defendant Calandra, as Mill's principal.

34.     Plaintiff also shared her concerns regarding Sammarco with Defendant Calandra.

35.     Plaintiff requested that Defendant Calandra keep the concerns she shared with

him about Sammarco confidential.  Although Defendant Calandra verbally agreed to this request,

Defendant Calandra disregarded his agreement and informed Sammarco of the concerns Plaintiff

had shared in retaliation against Plaintiff for her prior engagement in the activities protected by

Title VII and/or the HRL.

36.     Ever since Plaintiff shared her concerns with Defendant Calandra, and Defendant Calandra retaliated against Plaintiff by informing Sammarco of Plaintiff's concerns, Sammarco has continuously and repeatedly harassed and publicly displayed her distain for Plaintiff, and only against Plaintiff even though others raised similar complaints against Sammarco (said harassment and display of distain continues to the present time).

37.     Sammarco consistently and persistently has acted in a manner that is degrading and mean-spirited towards Plaintiff.

38.     Plaintiff has repeatedly attempted to maintain a cordial work environment, as she works in the same department and in the same wing of Mill as Sammarco.

39.     In response to Plaintiff's attempts to maintain a cordial work environment, Sammarco has purposefully ignored Plaintiff and has publicly and professionally demonstrated distain towards Plaintiff.  For instance, Sammarco has purposely ignored Plaintiff when Plaintiff greets her in the hallway, treating Plaintiff as if she does not even exist.  Sammarco has done this even when other staff and students are present.

40.     Sammarco has refused to be seated near or close to Plaintiff during team meetings, and on occasion has made very public displays of distain in said meetings by re-arranging furniture in such meetings to avoid sitting in proximity to Plaintiff.

41.     Sammarco has cut down Plaintiff in front of other staff at Mill and has called for other staff to do the same.  These acts of purposeful ignoring and out-right public humiliation and distain are hurtful and disheartening to Plaintiff.

42.     Prior to the submission of the Charge of Discrimination to the EEOC, and in compliance with District policy, Plaintiff made numerous requests to Defendant District (including to Defendant Calandra, as Mill's principal) to address Sammarco's inappropriate

8

conduct toward Plaintiff, including recently in a letter to Defendant District from Plaintiff's

counsel, dated October 16, 2012[1].

43.     In retaliation against Plaintiff for her engagement in activities protected by the

Title VII and/or the HRL as described above, Defendant District (and Defendant Calandra in

particular) refused, and continues to refuse, to address Sammarco's conduct.

44.     This environment became so hostile, Plaintiff sent a letter to Sammarco in the

Spring of 2007 asking that she cease her behavior.  This letter was sent out of desperation

because of Defendant District's (particularly Defendant Calandra's) utter failure to address this

unfortunate situation in any meaningful fashion.

45.     Instead of addressing this unfortunate situation, Defendant Calandra disciplined

Plaintiff by issuing a counseling letter that was placed in Plaintiff's employment file for the letter

she sent to Sammarco and Defendant Calandra took the position that he "100% supported"

Sammarco, thereby condoning and empowering Sammarco to continue in her conduct toward

Plaintiff.  Plaintiff submitted a rebuttal to the counseling letter.

46.     Defendant District's discipline of Plaintiff for sending a letter to Sammarco and

Defendant Calandra's "100% support" of Sammarco's conduct toward Plaintiff is retaliation

against Plaintiff for her engagement in activities protected by Title VII and/or the HRL as

discussed above.

47.     Upon information and belief, Defendant District would typically conduct an

investigation of allegations of co-worker on co-worker harassment and/or bullying and would

engage in a counseling process with the offending staff member.  However, this process has not

---

[1] Despite responding, through counsel, to said letter from Plaintiff's counsel, Defendant District continually fails to adequately address Plaintiff's concerns (i.e. upon information and belief, no steps have been taken to address the circumstances described herein and Plaintiff remains in the hostile work environment, with no known mitigating steps by Defendant District).

9

been followed in the instant matter, and Sammarco has been allowed to persist in her behavior

with Defendant Calandra's "100% support."

48.     On or about October 5, 2012, Plaintiff reiterated in writing to Defendant Calandra

(with copy to Defendant Kirsch, Defendant District's Superintendent for Human Resources) that

Sammarco continues in her inappropriate conduct toward Plaintiff.  In these correspondences

Plaintiff requested that Defendant District take action to address this matter.  Plaintiff's

correspondences have been ignored (even Plaintiff's request that Defendant Calandra confirm

receipt of her correspondence was ignored).

49.     Defendant District's utter failures to address this situation are unacceptable and is

retaliation against Plaintiff for her engagement in activities protected by Title VII and/or the

HRL as described above.


**Other Retaliation Against Plaintiff**

50.     In November 2006, for no justifiable reason, Defendant Calandra forbade Plaintiff

from printing her teaching materials to the same printer to which every other teacher on

Language Other Than English (LOTE) team is permitted to print.  This was done to

accommodate Suzanne Sammarco, a much younger teacher who frequently has and continues to

bully and harass Plaintiff as detailed herein.  As a result Plaintiff is forced to print to a printer

that is an unreasonable distance from her classroom.  This was an unreasonable and unnecessary

work condition which adversely affected Plaintiff's ability to do her job.  These circumstances

exist to date. Plaintiff has repeatedly asked Defendants, particularly Defendant Calandra, to

redress this situation (including as recently as June 2013), but Defendants have refused to do so.

Said refusal is retaliation against Plaintiff for her engagement in the activities protected by Title

VII and/or the HRL as described above and/or was discrimination against Plaintiff in violation of the ADEA.

51.    In or around February 2007, Plaintiff requested permission from Defendant Calandra to attend a local foreign language conference.  Although Defendant Calandra granted permission for two teachers (one of whom was Sammarco) to attend the conference, he denied Plaintiff's request.  The denial of said request was retaliation against Plaintiff for her engagement in the activities protected by the Title VII and/or the HRL as described above.

52.    Similarly, and in 2008, Plaintiff learned of an opportunity to apply for a grant to attend an educational seminar in Ecuador.  However, Plaintiff needed Defendant Calandra's permission to apply for the grant.  Although, upon information and belief, Defendant Calandra has frequently provided permission for other younger teachers to apply for similar grants, he denied such permission for Plaintiff.  Said denial was retaliation against Plaintiff for her engagement in the activities protected by Title VII and/or the HRL as described above and/or was discrimination against Plaintiff in violation of the ADEA.

53.    At the beginning of the 2007-2008 school year, Sammarco was on leave from the District for an extended period of time.  During this period of time, it was necessary for other foreign language teachers at Mill, including Plaintiff and the substitute teacher covering Sammarco's class, to access materials in Sammarco's filing cabinet.  Said action was necessary since Sammarco did not leave plans for her substitute teacher and was not returning phone calls and/or other communications.  After returning to school in November 2007, Sammarco discovered that her filing cabinet had been accessed and filed a complaint against *Plaintiff only*.

54.    Although Defendant District's investigation of Sammarco's complaint revealed (or should have revealed) that it was necessary for Plaintiff to access the filing cabinet (and

others also accessed the cabinet), Plaintiff was disciplined, and was the only individual

disciplined, as a result of Sammarco's complaint.  This situation was used as a basis to place

Plaintiff on a Teacher in Need of Improvement Plan (TIP) as discussed in paragraph 63 below.

These actions by Defendant District were retaliation against Plaintiff for her engagement in the

activities protected by Title VII and/or the HRL described above.

55.      Shortly thereafter, on December 17, 2007, another co-worker of Plaintiff (a friend

of Sammarco) screamed at Plaintiff in front of other staff (including Sammarco) and students in

the hallway, followed Plaintiff to her classroom continuing to scream at her, and hurled

demeaning and cruel statements at Plaintiff while students and staff witnessed.  Plaintiff

immediately brought the incident to Defendant Calandra's attention, but Defendant Calandra

offered no assistance to Plaintiff.

56.      Defendant Calandra's refusal to assist Plaintiff with this situation was further

retaliation against Plaintiff for her engagement in activities protected by Title VII and/or the

HRL as described above, and/or discrimination against Plaintiff in violation of the ADEA.

57.      Plaintiff was so upset and shaken by being screamed at in front of students and

staff by a co-worker (and Defendant Calandra's refusal to help) that, at the advice and support of

Mill's nurse, Jody Geraci, Plaintiff left work that day to seek the care of her physician.  Prior to

leaving work that day, Plaintiff ensured that coverage of her classroom was arranged, attempted

to notify Defendant Calandra and/or Mr. Patrick Heyden (Mill's Assistant Principal) of her

leaving (both of whom were unavailable), and because of their unavailability, Plaintiff ensured

that Ms. Geraci contacted either or both Defendant Calandra and/or Mr. Heyden as soon as they

were available (which, Ms. Geraci agreed to, and actually did).

58.      As a result of this incident, and in further retaliation against Plaintiff for her

engagement in activities protected by Title VII and/or the HRL as described above and/or

discrimination against Plaintiff in violation of the ADEA, no action was taken by Defendants

against the co-worker who had verbally berated Plaintiff in front of students and staff.

59.      Rather, Defendant Calandra placed a counseling letter in Plaintiff's personnel file

critiquing her regarding the manner in which she left work that day, said action being further

retaliation against Plaintiff for her engagement in activities protected by Title VII and/or the

HRL as described above and/or in discrimination against Plaintiff in violation of the ADEA.

Plaintiff submitted a rebuttal letter to this counseling memorandum.

60.      On a Monday in May 2008, Plaintiff, as she does every Monday with her

students, engaged students in a discussion about what the students did over the weekend.  One of

the students stated that he or she saw two female teachers at the movies.  Another student

mentioned how she often sees a male teacher out with another male.  Upon information and

belief, the male teacher is openly gay and this is well known to teachers and students at Mill.

Despite what Defendant District (particularly Defendant Calandra) later alleged, the comment by

the student about seeing the female teachers at the movies led to a discussion about the movie,

not the female teachers' personal lives.

61.      At a point during the conversation on that day another of Plaintiff's students

asked Plaintiff if the two female teachers at Mill were gay.  Plaintiff ignored this question and

intentionally changed the subject, since she deemed it inappropriate to discuss the personal lives

of colleagues (particularly with students).  Once again, despite what Defendant District later

alleged, Plaintiff did not engage the students in, and in fact quashed, any discussion of the

personal lives of teachers.

62.     The following day, Plaintiff, as a professional courtesy to a colleague, approached the male teacher who became the subject of discussion by her students, to inform him of the same.  Following this occurrence, Plaintiff was accused by Defendant District (in particular Defendant Calandra) of leading a discussion about the personal lives of teachers, an allegation that was entirely untrue.  Defendant District required Plaintiff to attend "sexual harassment training" and a counseling letter was placed in Plaintiff's employment file.  These actions against Plaintiff were in retaliation of Plaintiff's engagement in the activities protected by Title VII and/or the HRL as discussed above, and/or discrimination against Plaintiff in violation of the ADEA.

63.     In the Spring of 2008, Plaintiff spoke to Defendant Kirsch about transferring out of Mill due to the ongoing hostile working environment.  Defendant Kirsch rebuked and was condescending to said request.  Shortly thereafter, Plaintiff formally applied for a fulltime Spanish teaching position at North High School (another school within Defendant District's school district).  Upon information and belief, Defendant Kirsch is responsible for appointing to positions and/or making the final recommendation to Defendant District's Board of Education for the filling of positions (which recommendation is always rubber stamped by the Board).  Although Plaintiff was the most qualified teacher and had the greatest seniority, a much younger female teacher was chosen to fill said position as a result of Defendant Kirsch's decision and/or recommendation.

64.     In June 2008, despite Plaintiff's impeccable teaching abilities and unblemished teaching record (despite the retaliatory actions discussed above), Plaintiff was informed by Defendant Calandra that she was being designated as a "Teacher in need of Improvement" ("TIP").  This action by Defendant District against Plaintiff was once again in retaliation against

her for her engagement in the activities protected by Title VII and/or the HRL as discussed above and had nothing to do with her teaching abilities or performance and/or was discrimination against Plaintiff in violation of the ADEA.

65.     In Spring 2011, Plaintiff was informed by Defendant Calandra that she was being assigned to teach a section of French for the 2011-2012 school year.  Although Plaintiff was certified in French, she had not taught the subject in nearly twenty (20) years.  Plaintiff requested in writing that Defendant Calandra reconsider this assignment.  Plaintiff's request was ignored. A union representative also contacted Defendant Kirsch on Plaintiff's behalf regarding the issue, to no avail.

66.     After Defendant Calandra ignored Plaintiff's request to not teach French, Plaintiff wrote a letter to Defendant Calandra (and carbon copied the letter to the District's Superintendent and Defendant Kirsch, among others) making the same request based on the same reason.  Plaintiff was disciplined for writing the letter.  Plaintiff was reprimanded for writing the letter without making the request to Defendant Calandra first, which is entirely false since she did make the request to Defendant Calandra first, but was ignored.

67.     Upon information and belief, Defendant Calandra frequently grants requests from teachers (particularly *young* teachers) to not teach certain subjects and/or units.  Defendant Calandra's denial of Plaintiff's request and the discipline taken against her by Defendants for writing a letter to the Superintendent and Assistant Superintendent for Curriculum was retaliation against Plaintiff for her engagement in the activities protected by Title VII and/or the HRL as discussed above and/or was discrimination against Plaintiff in violation of the ADEA.

68.     Plaintiff taught a unit of French during the 2011-2012 school year and two units of French during the 2012-2013 school year.  Both assignments she objected to, as discussed

above.  Although Plaintiff submitted another letter to Defendant Calandra requesting that she not be assigned to teach French during the 2013-2014 school year, Defendant Calandra has not even acknowledged receiving said letter, and Plaintiff is currently scheduled to teach two sections of French for the 2013-2014 school year.

69.     In May 2012, Plaintiff applied for a transfer and interviewed for Spanish positions at North High School and Heim Middle School (two schools within Defendant District's school district).  Despite the fact that neither position was at Mill, Defendant Calandra sat on the interviewing committee for both positions.   The teacher who verbally berated Plaintiff (as discussed in paragraphs 54 through 58 above) also served on the interviewing committee.

70.     Although Plaintiff was the most qualified and had the greatest seniority status, Plaintiff was denied both positions.  Defendant District's denial of Plaintiff of these positions were retaliation against Plaintiff for her engagement in the activities protected by Title VII, the ADEA and/or the HRL as discussed above and/or was discrimination against Plaintiff in violation of the ADEA.

71.     In October 2012, September/October 2012 Plaintiff applied for a fulltime Spanish teaching position at East High School (a school within Defendant District's school district).  Despite Plaintiff's greater seniority and qualifications, a much less senior and less qualified teacher was hired to fill the position.

72.     Within the last few years, including the most recent 2012-2013 school year, Defendant Calandra has required that union representation be present for each and every meeting he has with Plaintiff.  For example, Defendant Calandra would inform Plaintiff of a scheduled meeting that is to occur at a future date and then states "you will need union representation at the meeting."  When Plaintiff inquires as to the nature of the meeting and the necessity for union

representation, Defendant Calandra provided her no explanation – leaving Plaintiff in fear that further retaliatory conduct is being taken against her.

73.     Defendant Calandra's insistence that Plaintiff had union representation at meetings and refusal to inform her of the nature of same is purposeful conduct on behalf of Defendant Calandra in order to intimidate Plaintiff, and to further instill fear and anxiety in retaliation against Plaintiff for her prior engagement in activities protected by Title VII, the ADEA and/or the HRL and/or in discrimination against Plaintiff in violation of the ADEA.

74.     Plaintiff has attempted on several occasions to transfer out of Mill to another school within the District.  However, Defendant Calandra's conduct and actions have led to Plaintiff being black-listed and rebuffed each and every time she sought a transfer (despite her impeccable teaching record and veteran/seniority status within the District).  Defendant Kirsch is aware of this situation and failed and refused to take any action despite having the authority to do so, and continues to the present time to fail and refuse to take meaningful action to address the same.

75.     From about 1993 through 2007, Plaintiff ran the school store at Mill.  Plaintiff earned a financial stipend for doing so.  In 2007, Defendant Calandra persuaded Plaintiff that it was no longer efficient for a teacher to run the school store due to purported negative tax implications.  In the 2012-2013 school year, Plaintiff discovered that contrary to Defendant Calandra's conclusion that a teacher should not run the school store, a teacher (who is much *younger* than Plaintiff) was running the school store.  Plaintiff made a request to Defendant Calandra that she be permitted to run the school store since she was the most qualified teacher (having done so for more than 16 years).  Defendant Calandra refused the request.  Said refusal is retaliation against Plaintiff for her engagement in the activities protected by Title VII and/or

the HRL as described above and/or was discrimination against Plaintiff in violation of the ADEA.

76.     After Plaintiff filed a complaint with the EEOC as described in paragraph 5 above, Defendants continued to retaliate against Plaintiff.  Specifically, on Friday June 21, 2013, Petitioner was requested via email by Defendant Kirsch to attend a meeting on Tuesday, June 25, 2013.   Defendant Kirsch expressed to Plaintiff that the meeting was not disciplinary in nature, and advised/encouraged Plaintiff to attend the meeting *without* union representation.  However, given her experience with Defendants and Defendants' ongoing creation of a hostile work environment, Plaintiff declined Defendant Kirsch's advice and attended the meeting on June 25, 2013 *with* union representation.  Contrary to the Defendant Kirsch's representations, the June 25, 2013 meeting was disciplinary in nature.

77.     At the June 25, 2013 meeting, Defendant Kirsch informed Plaintiff that Defendant District was limiting and/or stripping Plaintiff of rights and privileges available to all other teachers at Mill.  More specifically, Plaintiff was informed that she was no longer permitted to email her direct supervisor, Defendant Calandra Plaintiff was reprimanded for her practice of emailing Defendant Calandra, Plaintiff's direct supervisor.   The reprimand included the discussion of a recent email Plaintiff sent to Defendant Calandra in which Plaintiff requested that Defendant Calandra clarify the testing accommodation(s) protocol that was to be administered to a specific student in Plaintiff's class, who had recently sustained a traumatic brain injury.  Prior to sending the email, as detailed in the email to Defendant Calandra, Plaintiff had attempted to correspond with Defendant Calandra on several prior occasions.  However, Defendant Calandra specifically ignored and/or did not respond to Plaintiff's inquiries.

78.     Plaintiff sent the email referenced above to Defendant Calandra on a Friday afternoon and the District Final Examination was scheduled to be provided to the student in question early the following Monday morning.   Therefore, Plaintiff was in need of a quick response and informed Defendant Calandra that her inquiry was of a "high priority" and "respectfully request[ed]" a response "as soon as possible" but not later than the "close of business."

79.     Although the email to Defendant Calandra was entirely professional and necessary for the appropriate execution of Plaintiff's job duties, Plaintiff was reprimanded and threatened with charges of insubordination.

80.     Defendant Kirsch absurdly suggested that Plaintiff's emails to Defendant Calandra, all of which were necessary for the appropriate execution of Plaintiff's job duties, potentially constituted a violation of the District's "electronic usage policy."

81.     Defendant Kirsch informed Plaintiff that henceforth she was no longer allowed to email Defendant Calandara, her direct supervisor, *for any reason* (even personnel, student and other work-related matters).   Defendant Kirsch instead directed Plaintiff to inform Defendant Calandra's secretary when she needed to speak with Defendant Calandra and the exact nature of her correspondence and that Defendant Calandra would then "prioritize" the importance of the request and get back to her as he saw fit.

82.     In the Meeting Summary, Defendant Kirsch falsely purports that the directive being ordered upon Plaintiff regarding her communications with Defendant Calandra, *is the same process for all staff members*.   However, there is no such policy or practice and other staff members are freely permitted to email Defendant Calandra (and/or other supervisors).   There is no guideline, policy, and/or practice of Defendant District prohibiting email communication

between staff and supervisors.  Defendant Kirsch's absurd claim that Plaintiff may have violated Defendant District's "electronic usage policy" for sending emails that are essential to the performance of her job duties is a mere pretext to Defendants' retaliatory conduct.

83.    The stripping/limiting of Plaintiff's email privilege is clear retaliation against Plaintiff as said punishment would not have occurred but for Plaintiff's filing of the EEOC Complaint and/or her prior engagement in activities protected by Title VII and/or the HRL.  This disparate treatment of Plaintiff is creating a hostile work environment and limits and/or prohibits her ability to perform essential functions of her job and forces her to actively engage with her accused harasser.

84.    On one or more prior occasions, Plaintiff has attempted to verbally convey essential information to Defendant Calandra, only to be accused of failing to convey said information and since she did so verbally instead of in writing, she had nothing to prove that she attempted to do so.  The communication restrictions being forced upon Plaintiff is placing her in a situation in which she is forbidden from conveying important messages in writing and where it would be her word versus the word of her accused harasser if she is again accused of failing to convey important information.

**Other Discrimination (i.e. Age-Based Discrimination)**

85.    Defendant Calandra has also targeted Plaintiff and on the basis of age, since younger staff members are subject to a different set of rules (much more lenient) than her and a number of other older staff members.  For example, and as indicated above, Defendant Calandra frequently grants requests for younger teachers to teach or not teach certain subjects and/or units while requests for older teachers (including Plaintiff) are frequently denied, including as recently as the 2011-2012, 2012-2013, and 2013-2014 school years.

86.    In addition, younger teachers frequently leave the school building during the school day, without appropriate permission, and receive no punishment, while older teachers are not treated in the same way (see for example the way Plaintiff was disciplined for the events discussed in paragraphs 55 through 59 above).

87.    Moreover, and upon information and belief, one of the reasons Plaintiff has been required to teach French units over her objections was so a younger teacher would stay in a full time Spanish teaching position at Mill while completing a full time internship in counseling. This is an example of inappropriate favoritism based on age.

88.    Defendant Calandra has also condoned (and continues to condone) the use of openly derogatory statements about Plaintiff's age by other staff members, including Sammarco; namely, that Plaintiff is "such an old lady."


**Effect Upon Plaintiff**

89.    The conduct discussed above, as well as the resulting hostile work environment, constitutes employment discrimination against Plaintiff in violation of Title VII, the ADEA and the HRL.  It is also a violation of Defendant District's teacher code of conduct.

90.    Plaintiff has suffered greatly as a result of the deplorable conduct and work environment created by Defendants (Defendant Calandra in particular).

91.    Plaintiff has routinely been subjected to selective and unwarranted discipline, has been repeatedly denied transfer opportunities (including as recently as October 2012), which would have potentially rectified this deplorable situation, and has consistently and routinely been retaliated against, such as being forced to teach a subject that she has not taught or had any

meaningful training in approximately twenty-one years in an obvious and purposeful attempt to set Plaintiff up to fail.

92.     Defendants have engaged in a pattern of discrimination and retaliation, course of conduct, and critical mass of adverse employment actions against Plaintiff over many years starting particularly when Defendant Calandra gained a position of superiority over Plaintiff when he became principal at Mill in 2003 (and a tenured principal in 2006).

93.     Plaintiff has suffered, and continues to suffer, great emotional and physical distress as a result of this situation, including, without limitation, chest pains, panic attacks, sleeplessness, agitation and anxiety.  Plaintiff suffers from extremely painful migraine headaches which are exacerbated and/or are caused by the stress of the hostile work environment unlawfully caused by Defendants and has required ongoing treatment by a doctor.

94.     Not only have Defendants taken no steps to address co-worker on co-worker bullying and harassment against Plaintiff, Defendants (Defendant Calandra in particular) have punished Plaintiff for taking steps to manage and deal with this situation on her own, in retaliation against Plaintiff for her engagement in activities protected by Title VII and/or the HRL and/or in discrimination against Plaintiff in violation of the ADEA.


## CLAIMS FOR RELIEF

### Count One – Title VII of the Civil Rights Act of 1964

95.     Plaintiff realleges paragraphs 1 – 92.

96.     As described in further detail above, Defendants have engaged in retaliatory conduct against Plaintiff as a result of her opposition of practice(s) made unlawful by Title VII and/or as a result of Plaintiff's making of charge(s), testimony, assistance and/or participation in

investigations of conduct made unlawful by Title VII, namely her participation in the

investigation of the conduct of Defendant Calandra and her opposition to his hiring as a result of

said conduct.

97.     As a consequence of Defendants' discriminatory and/or retaliatory acts described

above, Plaintiff is entitled to compensatory damages, injunctive relief and other equitable relief

against each above-named Defendant, including but not limited to reinstatement to her previous

position as a full-time Spanish teacher; removal and expungment of any and all references in

Plaintiff's personnel file to any and all adverse employment actions against Plaintiff in retaliation

of her engagement in activities protected by Title VII; and rescinding the mandate limiting

and/or restricting Plaintiff's communications with Defendant Calandra, her direct supervisor.

98.     Plaintiff has retained the services of one or more attorneys in this action, and if

she prevails is entitled to an award of her reasonable attorney fees, against each of the above-

named Defendants, jointly and several, pursuant to 29 U.S.C. §794a(b).


## Count Two – Age Discrimination in Employment Act

99.     Plaintiff realleges paragraphs 1 – 96.

100.     As described in further detail above, Defendants have discriminated against

Plaintiff with respect to the terms, conditions, and/or privileges of her employment with

Defendant District because of Plaintiff's age.

101.     As a consequence of Defendants' discriminatory acts described above, Plaintiff is

entitled to compensatory damages, injunctive relief and other equitable relief against each above-

named Defendant, including but not limited to reinstatement to her previous position as a full-

time Spanish teacher; removal and expungment of any and all references in Plaintiff's personnel

file to any and all adverse employment actions against Plaintiff as a result of age-based

discrimination in violation of the ADEA.

102.    Plaintiff has retained the services of one or more attorneys in this action, and if

she prevails is entitled to an award of her reasonable attorney fees, against each of the above-

named Defendants, jointly and several, pursuant to 29 U.S.C. §216(b).

### Count Three – New York State Human Rights Law

103.    Plaintiff realleges paragraphs 1-100.

104.     As described in more detail above, Defendants have discriminated against

Plaintiff with respect to the terms, conditions and/or privileges and employment with Defendant

District because of Plaintiff's sex and age.

105.    As described in more detail above, Defendants have retaliated and/or

discriminated against Plaintiff as a result of Plaintiff's opposition to practices forbidden by the

HRL and/or due to her testimony and/or assistance in investigations of conduct prohibited by the

HRL and/or her engagement in other activities protected by the HRL.

106.    As a consequence of Defendants' discriminatory and/or retaliatory acts described

above, Plaintiff is entitled to compensatory damages, injunctive relief and other equitable relief

against each above-named Defendant, including reinstatement to her previous position as a full-

time Spanish teacher; removal and expunging of any and all references in Plaintiff's personnel

file to any and all adverse employment actions against Plaintiff in discrimination and/or

retaliation of her engagement in activities protected by the HRL; rescinding the mandate limiting

and/or restricting Plaintiff's communications with Defendant Calandra, her direct supervisor.

## DEMAND FOR JURY TRIAL

107.    Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.


WHEREFORE, Plaintiff demands judgment against Defendants, Williamsville Central School District, Michael Calandra, and Kimberly Kirsch, Ed.D. jointly and severally as follows:

A.  Compensatory damages as a result of the great physical and emotional distress Plaintiff has suffered; and

B.  Injunctive relief, both preliminary and permanent as described in paragraphs 95, 99 and 104; and

C.  Defendants shall be enjoined from engaging in retaliatory and discriminatory conduct against Plaintiff in the future; and

D.  Reasonable attorney fees pursuant to 29 U.S.C. §794a(b) and/or 29 U.S.C. §216(b); and

E.  Such other and further relief as the Court deems proper.

Dated: September 19, 2013
       Buffalo, New York

Carolyn Nugent Gorczynski, Esq.
COLLIGAN LAW LLP
Attorneys for Plaintiff
12 Fountain Plaza, Suite 600
Buffalo, New York 14202
cngorczynski@colliganlaw.com

W:\CNG\Hamm\Federal Complaint.docx

## VERIFICATION

STATE OF NEW YORK )
:ss:
COUNTY OF ERIE )

KAREN HAMM being duly sworn, deposes and says the deponent is the Plaintiff in the within action; that deponent has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters deponent believes it to be true.

Karen Hamm

Sworn to before me this
19th day of September, 2013.

Notary Public

CAROLYN M. NUGENT - Gorczynski
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Nov. 13, 20 14